# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**HONGWEI "TERRY" MA**                                                        **PLAINTIFF**

**v.**                                        **Case No. 3:19-cv-00344-KGB**

**NUCOR CORPORATION f/k/a Nucor Steel,**
**Nucor Arkansas, and/or Nucor Steel Arkansas**                              **DEFENDANT**

## OPINION AND ORDER

Before the Court is defendant Nucor Corporation f/k/a Nucor Steel, Nucor Arkansas, and/or Nucor Steel Arkansas's ("Nucor")[1] motion for summary judgment (Dkt. No. 44). Plaintiff Hongwei "Terry" Ma has responded to Nucor's motion for summary judgment (Dkt. No. 53). Nucor has filed a reply in support of its motion for summary judgment (Dkt. No. 59).

Also before the Court is Nucor's motion to strike portions of Ms. Ma's statement of material facts in dispute and summary judgment exhibits (Dkt. No. 60). Ms. Ma has responded to Nucor's motion to strike (Dkt. No. 64). Nucor has replied in support of its motion to strike (Dkt. No. 66).

For the following reasons, the Court grants, in part, and denies, in part, defendant Nucor's motion to strike and grants defendant Nucor's motion for summary judgment (Dkt. Nos. 60; 44).

## I.      Motion To Strike

Nucor filed a statement of undisputed material facts in support of its motion for summary judgment (Dkt. No. 46). Ms. Ma filed a statement of material facts in dispute in which she responded to Nucor's statement of undisputed material facts (Dkt. No. 55). To determine whether

---

[1] Ms. Ma initially also named as defendants Nucor-Yamato Steel Company (Limited Partnership), and its General Partners, Nucor Holding Corporation and Yamato Holding Corporation (Dkt. No. 1). Ms. Ma moved to dismiss those separate defendants from this action, and this Court granted that motion (Dkt. Nos. 6; 7).

there are any genuine issues of material fact in dispute in this matter, the Court will first consider Nucor's motion to strike portions of Ms. Ma's statement of material facts in dispute and summary judgment exhibits (Dkt. No. 60). Nucor brings its motion under Federal Rules of Civil Procedure 56 and Local Rule 56.1 of the United States District Court for the Eastern and Western Districts of Arkansas (*Id.*, ¶ 3). Ms. Ma has responded in opposition to the motion to strike (Dkt. No. 64). Nucor has replied in support of its motion to strike (Dkt. No. 66).

### A.   Legal Standard

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." An allegation contained in a pleading is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *CitiMortgage, Inc. v. Just Mortg., Inc.*, Case No. 4:09-cv-1909 DDN, 2013 WL 6538680, at *7 (E.D. Mo. Dec. 13, 2013) (internal quotations omitted). An allegation is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* While Rule 12(f) is understood to provide courts with "liberal discretion," the Eighth Circuit Court of Appeals has stated that "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)).

Local Rule 56.1(b) of the United States District Court for the Eastern and Western Districts of Arkansas requires a non-moving party to supply the Court with a statement of material facts "as to which it contends a genuine issue exists to be tried." *See Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011). Federal Rule of Civil Procedure 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing

to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Federal Rule of Civil Procedure 56(c)(2) states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

Under Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact as required by Rule 56(c), the court may:  (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).

**B.      Ms. Ma's Statements Of Material Facts In Dispute**

Nucor seeks to strike several of Ms. Ma's statements of material facts in dispute that are not supported by any citations to the record that would dispute the veracity of Nucor's statement of fact.  Specifically, Nucor seeks to strike Ms. Ma's paragraphs 11, 13, 14, 16, 18, 19, 20, 21, 22, 23, 28, 34, 35, 38, 40, 41, and 42.  Nucor contends that Ms. Ma's statements amount to nothing more than "pure speculation" which is inappropriate for a statement of material facts.

Additionally, Nucor maintains that Nucor and the Court should not have to search the record to look for factual disputes (*Id.* (citing *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007); *Brannon v. Luco Mop Co.*, 521 F.3d 843, 847 (8th Cir. 2008)).  Ms. Ma responds that, when Federal Rule of Civil Procedure 56 is "read closely," she is in compliance with the rule (Dkt. No. 64, ¶ 3).

Having examined the paragraphs Nucor seeks to strike, this Court concludes that Ms. Ma has failed to comply with Federal Rule of Civil Procedure 56(c)(1) in regard to paragraphs 11, 13, 14, 16, 18, 19, 20, 21, 22, 23, 28, 34, 35, 38, 40, 41, and 42, which include no citations to record evidence.  The Court, therefore, grants Nucor's motion and strikes these paragraphs of Ms. Ma's statement of material facts in dispute (Dkt. No. 55, ¶¶ 11, 13, 14, 16, 18, 19, 20, 21, 22, 23, 28, 34, 35, 38, 40, 41, 42).

### C.    Ms. Ma's Exhibits

Nucor also seeks to strike portions of Ms. Ma's affidavit because it asserts these portions of the affidavit are replete with legal conclusions and statements for which Ms. Ma has no personal knowledge (Dkt. No. 60, ¶ 4).  Additionally, Nucor moves to strike four other exhibits Ms. Ma attaches to her response to the motion for summary judgment because, according to Nucor, the exhibits are not authenticated by and attached to an affidavit made on personal knowledge in order to meet the requirements of Rule 56 (*Id.*).

"The district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial."  *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923 (8th Cir. 2004).  Federal Rule of Civil Procedure 56(c)(2) states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Federal Rule of Civil

Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court has reviewed Ms. Ma's affidavit (Dkt. No. 53-1). In paragraphs one through four of the affidavit Ms. Ma generally recounts what she allegedly was told by an employment counselor about what work experience she should include in her resumé. While this evidence is hearsay, it may be presented in a form that would be admissible evidence at trial. Accordingly, the Court denies the motion to strike paragraphs one through four of Ms. Ma's affidavit (*Id.*, ¶¶ 1-4). The Court strikes paragraph nine of Ms. Ma's affidavit because it states a legal conclusion (*Id.*, ¶ 9).

Nucor moves to strike exhibits 7A, 8A, 9A, and 10A to Ms. Ma's response to the motion for summary judgment (Dkt. Nos. 53-7, 53-10, 53-12, 53-14). Nucor argues that the exhibits are not authenticated by and attached to an affidavit made on personal knowledge setting forth facts in order to be admissible in evidence as required by Federal Rule of Civil Procedure 56 (Dkt. No. 61, at 4). Nucor maintains that the exhibits "appear to be Plaintiff's personal rebuttal of testimony from various depositions of Defendant's witnesses." (Dkt. No. 61, at 4). Further, Nucor asserts that the exhibits are not properly authenticated, lack foundation, are conclusory, and are inadmissible hearsay (Dkt. No. 61 (citing Fed. R. Evid. 602, 701, 802, 901)). The Court grants Nucor's motion to strike Ms. Ma's exhibits 7A, 8A, 9A, and 10A because the exhibits are not attached to an affidavit or signed declaration in order to be sufficient evidence to support Ms. Ma's response to Nucor's motion for summary judgment. *See* Fed. R. Civ. P. 56(c); *see also Tuttle*, 377 F.3d at 923.

## II.     Factual Background

The following facts are taken from the parties' filings, the Court having ruled on Nucor's motion to strike.

Nucor requires its teammates, supervisors, and managers to participate in interactive training sessions on its discrimination and harassment policies (Dkt. No. 55, ¶ 2).  Ms. Ma's resumé that was submitted to Nucor listed her last employer as Wuhan Iron and Steel (Group) Corporation ("WISCO") in China but failed to list her actual most recent employer, United States Steel Corporation ("U.S. Steel") (*Id.*, ¶ 4).  Nucor's employment application asked applicants to list their "work experience, starting with your most recent job held," and again Ms. Ma listed WISCO as her then-recent employer but failed to list her actual most recent employer, U.S. Steel. Unbeknownst to Nucor at the time because of the omission of the information on her employment application and resumé, Ms. Ma had worked for one other employer in the United States after WISCO and before joining Nucor.  Ms. Ma worked for U.S. Steel for approximately four months before both parties agreed to Ms. Ma's exit from U.S. Steel (*Id.*, ¶ 7) .  There is no law requiring a prospective employee to list all work history (*Id.*).

Ms. Ma received employment training at an employment center called "WorkOne" when she was searching for the position at Nucor and was told that it was not necessary to include all of her work experience on her resumé (Dkt. No. 53-1, ¶ 1).  Ms. Ma determined that it was not necessary to include a three-month irrelevant work experience in which Nucor has no similar production line in Electrolytic Tinning Lines (*Id.*, ¶ 2).  During Nucor interviews, interviewees did not ask Ms. Ma questions about her recent jobs but focused on Ms. Ma's technical skills in the steel field (*Id.*, ¶ 4).

Ms. Ma did not plan a lawsuit with her former employer U.S. Steel when she applied and interviewed for the job at Nucor in January 2018 (*Id*., ¶ 5).  At the time Ms. Ma applied for the job at Nucor, the Equal Employment Opportunity Commission ("EEOC") was mediating her case with U.S. Steel (*Id.*).  According to Ms. Ma, the EEOC had advised her, in March 2018, that U.S. Steel was willing to pay more money, but Ms. Ma rejected the settlement (*Id.*).  After Ms. Ma was terminated by Nucor in September 2018, Ms. Ma filed a lawsuit against U.S. Steel which ended in a settlement (*Id*., ¶ 6).[2]

Ms. Ma's first interview with Nucor was conducted by Chad Gentry, Chief Metallurgist for Nucor, in January 2018 over the telephone (Dkt. No. 55, ¶ 3).  Multiple Nucor teammates interviewed Ms. Ma, and based on representations of her education, work history, and experience, as detailed in her interview, resume, and employment application, Nucor extended an offer of employment to Ms. Ma to work as a metallurgist on February 6, 2018 (Dkt. Nos. 55, ¶ 8; 44-7, at 2).  At the time of Ms. Ma's hire, Nucor was clearly aware of Ms. Ma's sex, Chinese heritage, and Canadian citizenship, as it knew and agreed to sponsor her visa in order for her to be authorized to work for Nucor in the United States (Dkt. No. 55, ¶ 9).

In accordance with Nucor's policies and practices, after 90 days of employment Nucor conducted a peer review where Ms. Ma was assessed by her fellow metallurgists in several areas pertinent to her job performance (*Id*., ¶ 10).  Six Nucor teammates gave Ms. Ma feedback through the peer review process during May and June 2018, in the same manner that all other employees are reviewed though the peer review process (*Id.*, ¶ 11).  The feedback provided by Ms. Ma's peers identified issues including that Ms. Ma lacks interpersonal skills, she is impatient, she needs to

---

[2]  *See Ma v. United States Steel Corp.*, Case No. 2:18-cv-438 (N.D. Ind. filed Nov. 19, 2018).

listen better and see the big picture, and she needs to trust what others are telling her (*Id.*, ¶ 12). Ms. Ma was upset over the results of the peer review and disagreed with the feedback and comments given to her by her fellow teammates (*Id.*, ¶ 13). Ms. Ma's 90-day *peer* review states, "Performance is acceptable." (Dkt. No. 53-19, at 3). Ms. Ma's 90-day *self*-review states, "Performance is outstanding, superior, and stands out." (*Id.*, at 1)

After Ms. Ma received negative feedback through the peer review process, Ms. Ma began to complain of alleged inappropriate comments and actions by Mr. Gentry (*Id.*, ¶ 14). Ms. Ma reported Mr. Gentry's alleged "familiar and inappropriate" behavior to a member of Nucor management in early August 2018 (*Id.*, ¶ 15). Ms. Ma's allegations came principally from the time that she shared an office with Mr. Gentry (*Id.*, ¶ 16). Mr. Gentry invited Ms. Ma to a gathering on a non-working day at his home; however, this gathering was a get-together to which Mr. Gentry invited all of the Nucor metallurgists and which many of the metallurgists attended (*Id.*, ¶ 17). Mr. Gentry confirmed the only instance where he would have invited Ms. Ma to dinner was including her in an invitation that was also sent to other Nucor employees (*Id.*, ¶ 18). The "gifts," "business suits," and "business shirts" that Ms. Ma alleges Mr. Gentry gave her were Nucor shirts that were also given to other male and female teammates in advance of trips to other Nucor affiliates (*Id.*, ¶ 19). Any conversations Mr. Gentry initiated about his family came about because they shared an office space and were in close proximity and because of Mr. Gentry's attempts to build rapport with a new member of his work team; these conversations would have been general in nature and did not discuss Mr. Gentry's marriage (*Id.*, ¶ 20).

On or around August 13, 2018, immediately after Ms. Ma made her allegations, Nucor conducted a full investigation into Mr. Gentry's alleged behavior (*Id.*, ¶ 21). Nucor management, including Nucor's General Manager Mary Emily Slate, had discussions with Mr. Gentry and

several Nucor teammates with whom Mr. Gentry had worked closely over the course of his employment (*Id.*, ¶ 22).  After a full review of the investigative facts, Nucor determined that Ms. Ma's allegations were a result of her misunderstanding the literal or figurative meaning of the words used by Mr. Gentry or Ms. Ma not understanding the context of interactions or conversations (*Id.*, ¶ 23).

On August 16, 2018, Nucor management discussed the results of the investigation with Ms. Ma. (*Id.*, ¶ 24).  Although the investigation revealed no evidence of wrongdoing, Nucor immediately changed Ms. Ma's supervisor from Mr. Gentry to Dan Larson, Technical Services Manager (*Id.*, ¶ 25).  In a meeting with Mr. Larson and Keith Williams, Cold Mill Manager at Nucor, the job expectations for Ms. Ma moving forward were set and reviewed with Ms. Ma (*Id.*, ¶ 26).  During the meeting, it was also agreed that Ms. Ma was to continue to work on patience, active listening, and developing relationships with her peers by learning about others and sharing her history and experiences in order to improve her performance and teamwork (*Id.*, ¶ 27).

On or about July 2, 2018, Ms. Ma walked into the Hot Mill Lab while not wearing required personal protective equipment ("PPE") (*Id.*, ¶ 28).  There was a sign on the door leading to the Hot Mill Lab telling teammates not to enter without PPE (*Id.*, ¶ 29).  A teammate in the Hot Mill Lab told Ms. Ma that she needed PPE and told her not to go anywhere while the teammate obtained the PPE for her (*Id.*, ¶ 30).  No other employees were wearing a hard hat (*Id.*).  When the teammate returned, Ms. Ma had left without wearing any PPE (*Id.*, ¶ 31).  This incident was reported the following day by three Nucor teammates (*Id.*, ¶ 32).  On or about August 27, 2018, Ms. Ma was seen walking through the Coil Yard without proper PPE (*Id.*, ¶ 33).

During the investigation into Mr. Gentry's alleged behavior, a Nucor teammate reported that Ms. Ma grabbed the teammate by the shoulders and kicked her in the hip on or around August

9, 2018 (*Id.*, ¶ 34).  Ms. Ma also asked this teammate multiple times:  "Why are you so fat?" and "Can't you lose weight?" (*Id.*, ¶ 35).  Ms. Ma was counseled for this inappropriate behavior (*Id.*).

On or about August 27, 2018, Nucor learned that Ms. Ma's last place of employment was U.S. Steel (*Id.*, ¶ 36).  Ms. Ma had not listed this employment on her resumé, nor had she listed it on her employment application when specifically prompted, nor did she mention it during her employment interviews with Mr. Gentry and others (*Id.*, ¶ 37).  When Ms. Ma was confronted by Ms. Slate about this omission from her employment history, Ms. Ma initially denied that she worked at U.S. Steel (*Id.*, ¶ 38).  Eventually, Ms. Ma did admit that she worked for U.S. Steel, but she refused to provide Nucor with any information relating to who she worked for, who she worked with, or about her employment with or separation from U.S. Steel (*Id.*, ¶ 39).  Ms. Ma was later limited by her settlement agreement with U.S. Steel to stating that she left by agreement (*Id.*).  Ms. Ma purposely omitted this critical information from her employment application and resumé because she was terminated from U.S. Steel after only working there for several months (*Id.*, ¶ 40).  Ms. Slate made the decision to terminate Ms. Ma's employment because of the integrity issues related to her failure to disclose her former employer (*Id.*, ¶ 41).  Nucor terminated Ms. Ma's employment on September 10, 2018 (*Id.*, ¶ 42).

On or about February 21, 2019, Ms. Ma filed a Charge of Discrimination with the EEOC against Nucor, alleging discrimination based on sex, national origin, age, and retaliation (Dkt. Nos. 2, ¶ 33; 14-1).

### III.    Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most

favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373, International Brothers of Teamsters*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

Importantly, "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citing *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)). "Although employment discrimination cases are 'often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment.'" *Trierweiler v. Wells Fargo Bank*, 639 F.3d 456, 459 (8th Cir. 2011) (quoting *Fercello*, 612 F.3d at 1077). "An employer is entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision." *Ross v. Kan. City Power & Light Co.*, 293 F.3d 1041, 1047 (8th Cir. 2002) (internal quotations and citations omitted).

## IV.   Analysis

Ms. Ma brings this action against Nucor alleging age discrimination; sex discrimination; discrimination based on her gender and heritage or race; retaliation; and violation of state laws on discrimination (Dkt. No. 29, ¶¶ 1, 18-63). Ms. Ma alleges that Nucor is subject to vicarious liability for the actionable hostile work environment created by Nucor's employees and management personnel (*Id.*, ¶ 38). Ms. Ma sues Nucor pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; Title VII of the Civil Rights Acts of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and the Arkansas Civil Rights Act ("ACRA"), Arkansas Code Annotated § 16-123-107, *et seq.* (*Id.*, ¶¶ 11-15).

### A.   Age Discrimination

Ms. Ma stipulates that age was not a factor in her termination and concedes her discrimination claim (Dkt. No. 54, at 3). Accordingly, the Court grants Nucor's motion for summary judgment on Ms. Ma's ADEA claim.

### B.    Sexual Harassment

There are two types of sexual harassment claims under Title VII:  (1) quid pro quo harassment, "where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions[;]" and (2) "hostile work environment harassment, where 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 908 (8th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "Sexual harassment is quid pro quo if a tangible employment action follows the employee's refusals to submit to a supervisor's sexual demands."  *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1026-27 (8th Cir. 2004) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 752 (1998)).

In this case, Ms. Ma does not bring a quid pro quo sexual harassment claim because she does not allege that when she rejected Mr. Gentry's alleged sexual advances that she suffered a tangible employment action as a result.  Further, under the facts alleged in the record before the Court, Mr. Gentry was not Ms. Ma's supervisor at the time of her termination and was not involved in Nucor's decision to terminate Ms. Ma.  Accordingly, the Court will analyze Ms. Ma's sexual harassment claim as a hostile work environment claim.

To establish a *prima facie* case of hostile work environment harassment, Ms. Ma must show:  (1) that she is a member of a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her membership in the protected group; and (4) that the harassment affected a term, condition, or privilege of her employment.  *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 540 (8th Cir. 2014).  She must also demonstrate that a

supervisor caused the harassment.  *See Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006).

Ms. Ma asserts that she was sexually harassed by her supervisor Mr. Gentry.  Even if Ms. Ma could meet the first three elements of the *prima facie case*, to establish the fourth element, Ms. Ma must demonstrate that the harassment was "severe or pervasive enough to create an objectively hostile or abusive work environment" and that she subjectively believed that her working conditions had been altered.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Harassment "standards are demanding—to be actionable, conduct must be extreme and not merely rude or unpleasant."  *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003).  More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment.  *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999).  Ms. Ma must prove that the workplace was "permeated with discriminatory intimidation, ridicule, and insult."  *Harris,* 510 U.S. at 21.  Courts consider the "totality of the circumstances" to determine whether a work environment is hostile or abusive.  *Baker v. John Morrell & Co.*, 382 F.3d 816, 828 (8th Cir. 2004).  For example, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.

The Court has examined all of the record evidence.  Construing the record evidence in the light most favorable to Ms. Ma, she alleges the following to support her claim of a hostile work environment:  (1) that Mr. Gentry invited her to dinner; (2) that Mr. Gentry invited her to his house; (3) that Mr. Gentry asked for her body size; (4) that Mr. Gentry gave her gifts; (5) that Mr. Gentry

had a key to her apartment;[3] (6) that Mr. Gentry invited her to lunch on a weekend; (7) that Mr. Gentry talked to Ms. Ma about his allegedly failing marriage; (8) that Mr. Gentry asked Ms. Ma "[C]an you make me happy?"; and (9) that Mr. Gentry said to Ms. Ma "we make a good couple." Ms. Ma reported to a co-worker that Mr. Gentry was in love with her (Dkt. No. 53-13, at 17).

When Ms. Ma reported some of these allegations to General Manager Slate, Ms. Slate ordered an investigation.  The investigation revealed that Mr. Gentry did in fact invite Ms. Ma to a gathering on a non-working day at his home; however, this gathering was a get-together to which Mr. Gentry invited all of the Nucor metallurgists and which many of the metallurgists attended (Dkt. No. 55, ¶ 17).  Mr. Gentry confirmed the only instance where he would have invited Ms. Ma to dinner was including her in an invitation that was also sent to other Nucor employees (*Id.*, ¶ 18). The "gifts," "business suits," and "business shirts" that Ms. Ma alleges Mr. Gentry gave her were Nucor shirts that were also given to other male and female teammates in advance of trips to other Nucor affiliates (*Id.*, ¶ 19).  Any conversations Mr. Gentry initiated about his family came about because they shared an office space and were in close proximity and because of Mr. Gentry's attempts to build rapport with a new member of his work team (*Id.*, ¶ 20).

The following exchange occurred when Ms. Ma was asked at her deposition about what about Mr. Gentry's behavior was sexually harassing:

> Q      You said that Mr. Gentry invited you to dinner soon after you were hired and you thought that was harassing?  Why – why did you think that was harassing?

---

[3]   At her deposition, Ms. Ma testified that Mr. Gentry offered to bring Ms. Ma the key to the apartment that Nucor had obtained for her when she moved to Arkansas on a Sunday and to show her around the area before she began work on Monday.  Ms. Ma declined Mr. Gentry's offer and asked Mr. Gentry to leave the key at the plant's security shack for her to pick it up (Dkt. No. 53-6, at 119-120).  Mr. Gentry testified that he complied with Ms. Ma's wishes.  Mr. Gentry testified at his deposition that he had the key to Ms. Ma's apartment maybe two days because the person who normally keeps the keys was out of town.  Mr. Gentry testified that he did not retain a copy of the key to Ms. Ma's apartment (Dkt. No. 53-11, at 14-15).  Ms. Ma has not offered any evidence to the contrary.

A       No.  I – I – I said it is harassing.  I just say there's one place where he invited me to go to dinner.  And he said just you go own your own.  Just wait there.  Then I didn't go.  I said I do not want go dinner because it's a rural area.  At the night when I come to my apartment then I'm scared.  That's why I do not go for dinner.

Q       Did you – did you think that Mr. Gentry was inviting you to dinner because he was tying to pursue you sexually?

A       I – I – I just rejected it because nothing happened.  I don't know what he want me to do.  I just reject it.

Q       Okay.  So you don't know if it had anything to do with – with sex – why he invited you to dinner?

A       It did happen.  Why I cannot say happening thing, right?

Q       But just – I guess – I mean the fact that he invited you to dinner, do you think that was offensive sexually?

A       I think it's not a very – very improper.  I do not want to go dinner with any person.  That's not – it doesn't make sense why.

Q       You also said that Mr. Gentry at one point in July of 2018, that he invited you to a party at his house, to which you did not reply.  Did you think that was offensive sexually in some way?

A       Yeah.  I think you choose the partial things that what I talk.  That thing is for the party about all the teammates at his house.

Q       Yeah.  I didn't understand the first part of your answer.  Can you repeat what you said?

A       You talk about July?  July?

Q       Yes?

A       They invite all the teammates together.

                              * * *

Q       All right.  Well, let's – tell me then.  Let's testify.  Tell me whether you thought this invitation to a party at his house along with other teammates – if you thought that was offensive?

A      Because – because I just think offensive.  I want to explain to you.  Because of he talk with me, he want invited me for lunch on weekend.  But it never happened.  And he talked with at least two or three times.  But – I – I – I just tell the truth.  That is really he said he want to invite me for lunch on Saturday or Sunday.  And then he – this time he invited a older employee – a older teammate to his house.  I feel safe and I respect him also.  You know.  He's my boss.  That's why I went there.

* * *

Q      And so you thought it was sexual in nature the way he asked you about your shirt size?

A      No.  He – I – I thought – it's not I thought, it's the fact he try to please me.  He tried to build a relationship.

(Dkt. No. 44-22, at 16-19).

The Court concludes that, considering the record evidence in the light most favorable to Ms. Ma, she fails to meet the high bar of establishing a hostile work environment sufficient to defeat Nucor's motion for summary judgment on this claim.  Compared to other cases in which the Eighth Circuit Court of Appeals has found the alleged harassing conduct did not constitute gender discrimination, this Court determines that the harassment Ms. Ma alleges in this case, even if true, does not create an actionable hostile work environment claim.  *See Anderson v. Fam. Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (finding that the plaintiff failed to establish a hostile work environment claim where a supervisor had rubbed the employee's back and shoulders, called her "baby doll," accused her of not wanting to be one of his girls, suggested once in a long-distance phone call that she should be in bed with him, and insinuated that she could go farther in the company if she got along with him); *LeGrand v. Area Res. for Cmty and Human Servs.*, 394 F.3d 1098, 1100-03 (8th Cir. 2005) (finding that the plaintiff failed to establish a hostile work environment claim where the plaintiff asserted that a harasser asked plaintiff to watch pornographic movies and to masturbate together, suggested that the plaintiff would advance

professionally if the plaintiff caused the harasser to orgasm, kissed the plaintiff on the mouth, grabbed the plaintiff's buttocks, brushed the plaintiff's groin, reached for the plaintiff's genitals, and briefly gripped the plaintiff's thigh); *Alagna*, 324 F.3d at 980 (holding that a male teacher's touching a female teacher, telling her that he loved her, and acting inappropriately for two years was not sufficiently severe to satisfy a claim for hostile work environment sexual harassment).

Further, the Court finds that Ms. Ma has not established that Nucor knew of the harassment and failed to take proper remedial action.  Ms. Ma's complaints about Mr. Gentry were immediately investigated.  After the investigation, Nucor management discussed the results of the investigation with Ms. Ma (Dkt. No. 55, ¶ 24).  Although Nucor concluded the investigation revealed no evidence of wrongdoing, Nucor immediately changed Ms. Ma's supervisor from Mr. Gentry to Dan Larson, Technical Services Manager (*Id.*, ¶ 25).  In a meeting with Mr. Larson and Mr. Williams, the job expectations for Ms. Ma moving forward were set and reviewed with Ms. Ma (*Id.*, ¶ 26).

"If an employer responds to harassment with prompt remedial action calculated to end it, then the employer is not liable for the harassment." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 421 (8th Cir. 2010).  "Factors in assessing the reasonableness of remedial measures may include the amount of time that elapsed between the notice and remedial action, the options available to the employer, . . . and whether or not the measures ended the harassment." *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999) (citations omitted).

Viewing the record evidence in favor of Ms. Ma, nothing in the record permits a reasonable inference of severe and pervasive harassment, and the Court determines that no reasonable fact finder could find in favor of Ms. Ma on her hostile work environment harassment claim.

### C.    Gender, Race, And National Origin Discrimination Under Title VII And The ACRA

The Court understands Ms. Ma to assert claims of gender and race discrimination under Title VII and the ACRA.  The Court also understands Ms. Ma to assert a claim of national origin discrimination based on her Chinese "heritage" (Dkt. Nos. 29, ¶ 51; 14-1).  "The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."  *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973).  "Title VII makes it 'an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . national origin.'"  *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)).

### 1.    Legal Standard

Ms. Ma purports to state gender, race, and national origin discrimination claims under Title VII and the ACRA.  The same standard applies to both discrimination claims brought under Title VII and the ACRA.  *See McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 8555, 860 (8th Cir. 2009) (applying the same standards to Title VII and ACRA claims).  Ms. Ma can establish a *prima facie* claim of discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  *Jones v. City of St. Louis*, 825 F.3d 476, 480 (8th Cir. 2016); *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012).

Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)).

19

> Thus, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial.

*Id.* However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

Under the *McDonnell Douglas* analysis, the elements of a *prima facie* discrimination claim are: (1) the employee belonged to a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated employees who do not belong to the protected class. *Hesse v. Avis Rent A Car System, Inc.*, 394 F.3d 624, 631 (8th Cir. 2005). The fourth element of a *prima facie* discrimination case also can be met if the employee provides "some other evidence that would give rise to an inference of unlawful discrimination." *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003). Once an employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and then shifts back to the employee to show that the employer's reason was pretextual. *Hesse*, 394 F.3d at 631.

### 2. Analysis

#### a. Direct Evidence

At her deposition in response to a question about whether she believed anyone at Nucor talked negatively about the fact that she was female, Ms. Ma discussed reporting Mr. Gentry's harassment to Ms. Slate (Dkt. No. 53-6, at 65-66). Ms. Ma has not come forward with direct evidence of gender discrimination by those involved in the decision to terminate her employment (Dkt. No. 53-6, at 65-66).

Also at her deposition, in response to a question about whether anyone ever said anything bad about the fact that she was Chinese, Ms. Ma testified that on one occasion a co-worker, Mark DiGirolamo, allegedly stated to her as they were walking through the parking lot, "you Chinese cause the problem here." (Dkt. No. 53-6, at 58-59). "[D]irect evidence does not include stray remarks in the workplace, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007) (citing *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir. 1998) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989))). Here, the decision to terminate Ms. Ma was made by Ms. Slate, not by Mr. DiGirolamo. Accordingly, Ms. Ma has not presented direct evidence of race or national origin discrimination.

### b.      Legitimate Job Expectations

Nucor does not dispute that Ms. Ma can meet the first and the third prongs of her *prima facia* case of discrimination. Nucor disputes, however, that Ms. Ma can establish that she was meeting its legitimate job expectations (Dkt. No. 45, at 27-28). Nucor asserts that the record evidence establishes that Ms. Ma failed to meet its legitimate job expectations because she omitted critical information about her background and experience from her resumé and job application (*Id*., at 27). Nucor contends that, if it had been aware of Ms. Ma's prior employment with U.S. Steel at the time it interviewed Ms. Ma, it would have been able to ask more questions about her brief time there that would have been directly relevant to Nucor's legitimate job expectations and also Nucor would have been able to inquire about the reasons for her termination (*Id.*). Nucor represents that, based on that information, Nucor likely would not have hired Ms. Ma, and ultimately Ms. Ma's employment was terminated because of these integrity issues (*Id*). Nucor also argues that Ms. Ma's peer review revealed that Ms. Ma had several issues related to integrity,

teamwork, and communication (*Id.*).  Nucor contends that Ms. Ma was not meeting expectations in these fundamental areas (*Id.*).  Additionally, Nucor asserts that Ms. Ma was not meeting expectations with respect to safety because Ms. Ma had on two separate occasions ignored signage and neglected to wear PPE (*Id.*).

Ms. Ma counters that her 90-day peer review criticized her communication and social skills but stated her job performance was "acceptable." (Dkt. No. 53-19, at 3).  Ms. Ma also contends that Nucor complaining about her omitting a short-term employer from her job history is Nucor justifying retaliation for her complaints against Mr. Gentry for sexual harassment (Dkt. No. 54, at 11).  Ms. Ma asserts that her separation from U.S. Steel was by agreement (*Id.*).  Ms. Ma also contends that the failure to list a former employer does not violate any law (*Id.*, at 12).  Ms. Ma asserts in her brief that she disputes the safety violations, but she does not point to evidence in the record to support her denial of the safety violations (Dkt. No. 54, at 11).  To the contrary, Ms. Ma testified at her deposition that, on July 2, 2018, she entered the Hot Mill Lab while not wearing a hard hat (Dkt. Nos. 53-6, at 84).  Ms. Ma does not deny that, on August 27, 2018, she was again seen walking through the Coil Yard without proper PPE (Dkt. No. 55, ¶ 33).  Ms. Ma maintains that her teamwork suffered because Mr. Gentry refused to assign her with responsibility that encouraged teamwork, asking her to write her own position responsibilities and job description (Dkt. No. 54, at 12).  Ms. Slate testified, however, that for a professional role, like a metallurgist, Ms. Ma's role would have been clear, and there would not have been a written job description (Dkt. No. 53-15, at 29).

The "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions."  *Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005) (quoting *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998)).  "The fact that an employee meets some

expectations, however, does not mean that she meets the standard if she does not meet other significant expectations." *Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 729 (8th Cir. 2002). The undisputed record evidence demonstrates that Ms. Ma did not reveal on her application for employment with Nucor her most recent position with Nucor's competitor, U.S. Steel. When Nucor discovered Ms. Ma's omission of this work experience on her application and resumé and raised it with Ms. Ma, Ms. Ma was not immediately forthcoming about her work experience at U.S. Steel raising integrity concerns for Nucor. The record evidence also indicates that Ms. Ma failed to meet Nucor's expectations related to safety. Finally, the record evidence also demonstrates that Ms. Ma's peer review indicated that Ms. Ma had several issues related to integrity, teamwork, and communication with teammates.

Based on the record evidence, construing all reasonable inferences in favor of Ms. Ma, the Court determines that no reasonable juror could find that Ms. Ma was meeting Nucor's legitimate job expectations as a result, and thus, she fails to satisfy the second element of her *prima facie* case of gender, race, and national origin discrimination under Title VII and the ACRA.

Nucor also argues that Ms. Ma is unable to demonstrate that she was treated differently than similarly situated employees outside of her protected class (Dkt. No. 45, at 28-29). "[A] plaintiff can satisfy the fourth part of the *prima facie* case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1039-40 (8th Cir. 2010)).

Nucor argues that Ms. Ma has not identified a similarly situated employee outside of her protected class who was involved in or was accused of issues with respect to integrity, performance review, and job performance issues but who was not terminated (Dkt. No. 45, at 29). Ms. Ma

23

contends that "[w]hen direct evidence of discrimination is presented the *McDonnell Douglas* analysis does not apply." (Dkt. No. 54, at 12 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)). As set forth above, however, Ms. Ma has not presented any direct evidence of gender, race, or national origin discrimination in the form of biased comments by Ms. Slate.

Ms. Ma points to one "comparator" a "summer intern" who shared an office with Mr. Gentry during her internship. Ms. Ma does not, however, provide the gender, race, or national origin of the "summer intern" in order for the Court to evaluate whether that person is an adequate comparator. Additionally, Ms. Ma has not provided evidence that the "summer intern" was involved in or accused of the same or similar conduct and was disciplined differently than Ms. Ma.

The Court also understands Ms. Ma points to Nucor's "civil litigation history regarding discrimination under Title VII" as comparator evidence. Past litigation against Nucor, however, has no relevance to whether there are comparators for establishing a *prima facia* case of gender, race, or national origin discrimination in Ms. Ma's case unless the Court is provided enough detail to understand how the litigants in prior cases against Nucor were comparators to Ms. Ma, which is not the case on the record before the Court.

Based on the record evidence, construing all of the reasonable inferences in favor of Ms. Ma, the Court determines that no reasonable juror could find in Ms. Ma's favor on the fourth element of her gender, race, or national origin claims of discrimination under Title VII or the ACRA.

### c.     Legitimate Nondiscriminatory Reason

Nucor contends that, even if Mr. Ma could establish a *prima facie* case of gender, race, or national origin discrimination, Nucor had a legitimate, non-discriminatory reason for terminating Ms. Ma. The employer's burden to articulate a nondiscriminatory reason is "not onerous." *Flloyd*

*v. Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999). Nucor articulates a non-discriminatory reason for Ms. Ma's termination by maintaining that it terminated her for lying on her employment application by omitting, and by failing to acknowledge when confronted by Nucor, relevant and recent work experience with a direct Nucor competitor, U.S. Steel. District courts have held that lying on an employment application constitutes a legitimate, non-discriminatory ground for termination. *See e.g. Kravit v. Delta Air Lines, Inc.*, Case No. CV-92-0038, 1992 WL 390236, at *2 (E.D. N.Y Dec. 4, 1992); *Fullman v. Potter*, 480 F. Supp. 2d 782, 792 (E.D. Pa.), *aff'd* 254 F. App'x 919 (3d Cir. 2007). Additionally, Ms. Ma violated company policy when she committed safety violations and exhibited job performance, integrity, and teamwork issues. On the record evidence before the Court, Nucor meets its burden to articulate a non-discriminatory reason for Ms. Ma's termination.

### d.    Pretext

Once the employer articulates a legitimate, non-discriminatory reason for the challenged conduct, the plaintiff must produce sufficient evidence to create a genuine issue of material fact regarding whether the proffered reason is mere pretext for intentional discrimination. *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005). The plaintiff has the burden of showing, by a preponderance of the evidence, that the employer's proffered reason for the challenged action is not true and that discrimination was the real reason. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).

"At the pretext stage, 'the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.'" *Bone*, 686 F.3d at 956 (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005)). To succeed at the pretext stage, Ms. Ma must show that she and the potential comparators she identifies were "similarly situated in all relevant respects." *Id.*

(quoting *Rodgers*, 417 F.3d at 853). That is, the employees "used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 994 (8th Cir. 2011) (quoting *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004)).

Viewing the record evidence in the light most favorable to Ms. Ma, no reasonable fact finder could conclude that Ms. Ma has identified comparators to demonstrate pretext. Ms. Ma has not identified any purported comparator not in the protected class who lied on their employment application by omitting and then failed to acknowledge when confronted by Nucor relevant and recent work experience with a direct Nucor competitor, committed safety violations, and had job performance, integrity, and teamwork issues and who was supervised by the same individual as Ms. Ma and was not terminated.

If the proffered reason for an employee's termination is shown by conflicting evidence to be untrue, then the nonmoving party is entitled to all favorable inferences that the false reason given masks the real reason of intentional discrimination. *Loeb v. Best Buy Co.*, 537 F.3d 867, 873 (8th Cir. 2008). Here, Ms. Ma admits to not listing her work experience at U.S. Steel on her resumé or employment application when applying for the position with Nucor (Dkt. No. 55, ¶¶ 4, 5). Further, Ms. Ma admits that, when confronted about it, she refused to provide Nucor with any information about her employment with U.S. Steel including who she worked for, who she worked with, or her separation from U.S. Steel (Dkt. No. 55, ¶ 39). Ms. Ma asserts that she was limited by a settlement agreement with U.S. Steel; however, the evidence in the record indicates that, at the time that Nucor terminated Ms. Ma's employment on September 10, 2018, Ms. Ma had not entered into a settlement agreement with U.S. Steel. Ms. Ma did not enter into an agreement with

U.S. Steel until after she filed a lawsuit against U.S. Steel on or about November 19, 2018, more than a month after her employment with Nucor ended (Dkt. No. 53-1, ¶ 6).  Ms. Ma also admits that she failed to follow safety standards on two occasions (Dkt. Nos. 53-6, at 84; 55, ¶¶ 28-33).

Ms. Ma contends that she omitted the work experience at U.S. Steel because it was brief and irrelevant and because her resumé was too long.  Ms. Ma also contends that, at other plants at which she worked, she was not required to wear PPE.  Finally, Ms. Ma asserts that at Nucor she was not given job assignments that helped her with teamwork issues.  Generally, an employee's justifications for failing to meet the employer's expectations are not evidence that creates a genuine issue of fact as to whether the employer's reasons were mere pretext.  *Haigh v. Gelita USA, Inc*., 632 F.3d 464, 470 (8th Cir. 2011); *Riley v. Lance, Inc.,* 518 F.3d 996, 1002 (8th Cir. 2008) ("[The plaintiff's] attempt to justify his failure [to meet the employer's requirements] does not create a genuine issue as to the legitimacy of the requirement.").  Accordingly, any alleged factual dispute regarding the details of some of the alleged conduct and whether other actions were justifiable does not preclude summary judgment.

Moreover, "[t]he critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *McCullough v. Univ. of Ark. For Med. Sciences*, 559 F.3d 855, 861-62 (8th Cir. 2009).  Viewing the record evidence in the light most favorable to Ms. Ma, no reasonable fact finder could conclude that Nucor did not in good faith believe that Ms. Ma engaged in the conduct for which she was terminated; Ms. Ma admits that she engaged in the conduct.

Further, the Court understands Ms. Ma to criticize Nucor's investigation into her complaints about Mr. Gentry, but the Court notes, "[t]he appropriate scope of investigation is a

business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination." *Id.* at 863.

"[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee.  A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 643 (8th Cir. 2008) (internal quotation marks and citation omitted).   Viewing the record evidence in favor of Ms. Ma, nothing in the record permits a reasonable inference of discriminatory animus, and no reasonable fact finder could find in favor of Ms. Ma on pretext.

As a result, because Ms. Ma fails to demonstrate a *prima facie* case of gender, race, or national origin discrimination; because Nucor has articulated a legitimate, non-discriminatory reason for her termination; and because Ms. Ma fails to establish pretext and a reasonable inference of discriminatory animus, the Court grants summary judgment in favor of Nucor on Ms. Ma's gender, race, and national origin discrimination claims.

### D.   Retaliation

To establish a *prima facie* case of retaliation, Ms. Ma must show that:  (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the protected activity and the adverse action.  *Wilkie v. Dep't of Health and Human Servs., Inc.*, 638 F.3d 944, 955 (8th Cir. 2011).  For a Title VII claim, "[r]etaliation must be the 'but for' cause of the adverse employment action." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (internal revisions, quotations, and citations omitted).  For these claims, "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Blomker*, 831 F.3d at 1059 (citations omitted).  "Generally, more than a

temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc), *cert. denied,* 528 U.S. 818.  The Court evaluates ACRA retaliation claims under the same legal framework.  *See Brown v. City of Jacksonville*, 711 F.3d 883, 892 (8th Cir. 2013); *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011).  If Ms. Ma establishes a *prima facie* case of retaliation, the Court applies the *McDonnell Douglas* framework.  *See Shirrell v. St. Francis Med. Ctr.,* 793 F.3d 881, 887 (8th Cir. 2015).

Ms. Ma claims that she was terminated "in retaliation for [her] rejection of [Mr.] Gentry's advances and her complaints to management, her EEOC Charge[,] and based on a discriminatory animus of sex and race discrimination" (Dkt. No. 29, ¶ 57).  The Court notes that Ms. Ma filed her EEOC Charge of Discrimination on February 21, 2019, over five months after she was terminated on September 10, 2018.  The Court does not see how filing her Charge of Discrimination could serve as the basis for a retaliation claim since she did not file the charge until after the alleged retaliatory act.

Although the Circuit Courts of Appeals are split on whether declining a supervisor's sexual advances constitutes protected activity under Title VII, the Eighth Circuit has recognized that a plaintiff engages in "the most basic form of protected conduct" when she tells her supervisor to stop harassing her.  *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000); *see also Culton v. Mo. Dep't of Corr.*, 515 F.3d 828, 831 (8th Cir. 2008) (holding that plaintiff's "efforts to stop the harassment of a co-worker" constituted "an activity that is protected by Title VII").  District courts within the Eighth Circuit have also held that refusing to submit to a supervisor's sexual advances could constitute protected activity under Title VII, depending on the factual circumstances at issue.  *See, e.g.*, *Coe v. N. Pipe Prods., Inc.*, 589 F. Supp. 2d 1055, 1104 (N.D.

Iowa 2008); *Ellet v. Big Red Keno, Inc.*, No. 8:96CV274, 1998 WL 476106, at \*10 (D. Neb. June 19, 1998).  However, "when an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes" protected activity.  *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009); *see also Gustafson v. Genesco, Inc.*, 320 F. Supp. 3d 1032, 1051 (S.D. Iowa 2018) ("The range of protected activity includes an informal complaint to management." (internal quotations and citations omitted)).  Ms. Ma's alleged complaints to management—which management clearly received as evidenced by the investigation into Ms. Ma's complaints— represent statutorily protected activity.  Thus, Ms. Ma's complaints to management clearly establish the first prong of her retaliation claim.

Nucor argues that Ms. Ma's retaliation claim fails because she cannot establish that there is a causal link between any of the alleged protected activity and her termination (Dkt. No. 45, at 40).  Nucor points out that Ms. Ma's performance issues began well before any alleged protected activity (*Id.*).  Ms. Ma's peer review results, which were finalized in June 2018, preceded any allegation of sexual harassment or alleged inappropriate behavior by Mr. Gentry (*Id.*).  Ms. Ma's peers and supervisors were expressing issues with Ms. Ma's job performance three months into Ms. Ma's employment at Nucor, and Ms. Ma was told about several areas for improvement through the peer review process and was expected to make significant improvement (*Id.*).  Mr. Williams, the Cold Mill Manager at Nucor, discussed performance issues with Ms. Ma including her talking over folks and otherwise creating a negative environment on many occasions during her employment (*Id.* (citing Dkt. No. 44-8, at 5)).  Additionally, one of Ms. Ma's safety violations occurred on July 2, 2018, prior to any protected activity (*Id.*, at 41 (citing 44-15, at 2)).  Ms. Ma made allegations against Mr. Gentry to Ms. Slate in early August 2018 (Dkt. No. 44-3, at 3-4).

Subsequent to her complaints and Nucor's investigation of those complaints, Nucor became aware that Ms. Ma failed to disclose her former employment with U.S. Steel (*Id.*, at 7).  After concluding that Ms. Ma had omitted critical information about her prior employment and was dishonest when confronted about it, Ms. Slate made the decision to terminate Ms. Ma's employment (*Id.*).

Ms. Ma points out that a period of days passed between the conclusion of what she terms Nucor's "sham investigation" of her complaints of harassment and her termination, but "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."  *Kiel*, 169 F.3d at 1136.   Ms. Ma also contends that there were no criticisms of her ability to perform the responsibilities of her position, but the record indicates otherwise.  While Ms. Ma may have been technically proficient, she had difficulties with teamwork and at least one safety violation prior to lodging a complaint with Ms. Slate regarding Mr. Gentry.  Here, construing the record evidence in favor of Ms. Ma, she fails to demonstrate retaliation was the but for cause of the adverse employment action.  *See Blomker*, 831 F.3d at 1059.

Even if Ms. Ma can establish her *prima facie* claim of retaliation, the Court determines that she cannot establish pretext.  For all of the same reasons Ms. Ma fails to demonstrate pretext with respect to her gender, race, and national origin discrimination claims previously analyzed by the Court, she also fails to demonstrate pretext with respect to her retaliation claim.  Construing all of the record evidence in favor of Ms. Ma, no reasonable fact finder could find pretext.  As a result, the Court grants summary judgment in favor of Nucor on Ms. Ma's retaliation claim.

**V.      Conclusion**

It is therefore ordered that:

a.      the Court grants in part and denies in part consistent with the terms of this Order

Nucor's motion to strike portions of Ms. Ma's statement of material facts in dispute

and summary judgment exhibits (Dkt. No. 60).

b.      the Court grants Nucor's motion for summary judgment (Dkt. No. 44).

c.      the Court dismisses Ms. Ma's amended complaint with prejudice (Dkt. No. 29).

It is so ordered this 29th day of August, 2022.

Kristine G. Baker
United States District Judge